**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HERNAN PRADOS,  <br><br>  Plaintiff,  <br><br>  v.  <br><br> METROMILE, INC., DAN PRESTON, COLIN BRYANT, JOHN BUTLER, SANDRA CLARKE, RYAN GRAVES, and VIKAS SINGHAL,  <br><br>  Defendants. | Case No:  <br><br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**  <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Hernan Prados ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1. This is an action against Metromile, Inc. ("Metromile" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

1

connection with the proposed acquisition (the "Proposed Transaction") of Metromile by Lemonade, Inc. ("Lemonade").

2. On November 8, 2021, Metromile entered into an Agreement and Plan of Merger, by and among Metromile, Lemonade, Citrus Merger Sub A, Inc., a wholly owned subsidiary of Lemonade ("Acquisition Sub I"), and Citrus Merger Sub B, LLC, a wholly owned subsidiary of Lemonade ("Acquisition Sub II"), whereby Metromile will be acquired by Lemonade and each issued and outstanding share of Metromile common stock will be converted into the right to receive 0.05263 shares of Lemonade common stock (the "Exchange Ratio") with cash being paid in lieu of any fractional shares of Lemonade common stock.

3. On December 29, 2021, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

4. The Proxy Statement, which recommends that Metromile shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the financial projections of Metromile and Lemonade; (ii) the financial analyses performed by the Company's financial advisor, Allen & Company LLC ("Allen & Company"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

5. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the February 1, 2022 shareholder vote on the Proposed Transaction.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.

9. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10. Plaintiff is, and has been at all relevant times hereto, an owner of Metromile common stock.

11. Defendant Metromile provides pay-per-mile car insurance services in the United States and internationally. Metromile also licenses artificial intelligence claims platform to automate claims, reduce losses associated with fraud, and unlock the productivity of insurance carriers' employees. Metromile is incorporated in Delaware. Metromile offers certain insurance products in various jurisdictions, including in New Jersey. Metromile's common stock trades on the NASDAQ under the ticker symbol, "MILE."

12. Defendant Dan Preston ("Preston") is Chief Executive Officer ("CEO") and a director of the Company.

13. Defendant Colin Bryan ("Bryant") is a director of the Company.

14. Defendant John Butler ("Butler") is Chairman of the Board of the Company.

15. Defendant Sandra Clarke ("Clarke") is a director of the Company.

16. Defendant Ryan Graves ("Graves") is a director of the Company.

17. Defendant Vikas Singhal ("Singhal") is a director of the Company.

18. Defendants Preston, Bryant, Butler, Clarke, Graves, and Singhal are collectively referred to herein as the "Individual Defendants."

19. Defendants Metromile and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On November 8, 2021, Metromile and Lemonade issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

### Lemonade To Acquire Metromile

November 08, 2021 04:10 PM Eastern Standard Time

NEW YORK--(BUSINESS WIRE)--Lemonade (NYSE: LMND) the insurance company powered by AI and social good, and Metromile (NASDAQ: MILE, MILEW), the data science company focused on auto insurance, have entered into a definitive agreement pursuant to which Lemonade will acquire Metromile in an all-stock transaction that implies a fully diluted equity value of approximately $500 million, or just over $200 million net of cash. Under the terms of the transaction, Metromile shareholders will receive Lemonade common shares at a ratio of 19:1. (*Read more on why Lemonade is acquiring Metromile*)

While Lemonade has been at the forefront of using big data and AI in home and pet insurance, Metromile has been trailblazing a parallel path for car insurance. Metromile's car-mounted precision sensors took over 400 million road trips in

4

recent years, covering billions of miles and sending real-time streams to the Metromile cloud. These were cross referenced with actual claims data, yielding precise predictions for losses per mile driven. These algorithms hold the promise of propelling Lemonade Car from a newcomer in the car insurance space to its vanguard.

"We launched Lemonade Car last week, and we think you'll love how it looks and handles. Pop the hood and you'll see that it's powered by telematics and architected to learn from the data it generates, with precision pricing as its ultimate destination," said Daniel Schreiber, Lemonade CEO and cofounder. "That's where Metromile comes in. They have been down this road billions of times, and their proprietary data and machine learning algorithms can vault us over the most time and cost intensive parts of the journey. In a vast and competitive market like auto insurance, today's deal is a huge unlock of value for our customers and shareholders."

Metromile enjoys 49 state licenses, over $100 million of seasoned in-force premium (IFP), over $250 million of cash on the balance sheet, and a team unmatched for their expertise in harnessing big data and AI for car insurance.

"We've long admired Lemonade for its beautiful products, world-class customer experience, unprecedented growth, and socially-impactful business model," said Dan Preston, CEO of Metromile. "The data science-driven technology platform we built created fairer and more individualized car insurance for consumers in an industry marred by vast inequities. Joining forces with Lemonade Car will create the most customer-centric, fair, and affordable car insurance, and is a great outcome for Metromile shareholders, who will benefit as shareholders of the combined company. It also means that now, homeowners, renters, and drivers alike can have all of their insurance needs with a single company that truly has their best interests at heart."

The transaction is expected to close during Q2 2022, once all regulatory approvals have been secured. The transaction requires the approval of Metromile stockholders, and is subject to other customary closing conditions.

Investor presentation available at: https://investor.lemonade.com/Q32021Presentation

**About Lemonade**
Lemonade offers renters, homeowners, pet, car, and life insurance. Powered by artificial intelligence and behavioral economics, Lemonade's full stack insurance carriers in the US and the EU replace brokers and bureaucracy with bots and machine learning, aiming for zero paperwork and instant everything. A Certified B-Corp, Lemonade gives unused premiums to nonprofits selected by its community, during its annual Giveback. Lemonade is currently available in the

United States, Germany, the Netherlands, and France, and continues to expand globally.

For more information about Lemonade, visit www.lemonade.com and follow @lemonade_inc on Twitter.

**About Metromile**
Metromile (NASDAQ: MILE, MILEW) is a leading digital insurance platform in the United States. With data science as its foundation, Metromile offers real-time, personalized auto insurance policies by the mile instead of the industry's reliance on approximations that have historically made prices unfair. Metromile's digitally native offering is built around the modern driver's needs, featuring automated claims, complimentary smart driving features and annual average savings of 47% over what they were paying their previous auto insurer.

In addition, through Metromile Enterprise, it licenses its technology platform to insurance companies around the world. This cloud-based software as a service enables carriers to operate with greater efficiency, automate claims to expedite resolution, reduce losses associated with fraud, and unlock the productivity of employees.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

    **1. Material Omissions Concerning Metromile's and Lemonade's Financial Projections**

21.    The Proxy Statement omits material information concerning the financial projections.

22.    With respect to the "July Metromile Forecasts" and "October Metromile Forecasts," the Proxy Statement fails to disclose: (1) all line items underlying (i) Direct Earned Premium, (ii) Insurance Revenue, (iii) Contribution Profit, (iv) Operating Income, and (v) Unlevered Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

23.    With respect to the "Extrapolated Lemonade Forecasts," the Proxy Statement fails to disclose: (1) all line items underlying (i) Adjusted Gross Profit, (ii) EBITDA, and (iii) Unlevered Free Cash Flow; (2) Lemonade's net income projections; and (3) a reconciliation of all non-GAAP

to GAAP metrics.

24. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the Company's future financial performance and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

25. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Allen & Company's Analyses

26. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Allen & Company.

27. With respect to Allen & Company's "*Selected Public Companies Analysis*" for Metromile and Lemonade, the Proxy Statement fails to disclose the individual multiples and financial metrics for each company Allen & Company observed in its analyses and the objective criteria used to deem the selected companies relevant.

28. The Proxy Statement fails to disclose the following concerning Allen & Company's "*Selected Precedent Transactions Analysis*": (1) the individual multiples and financial metrics for each of the selected transactions; (2) the date on which each selected transaction closed; and (3) the total values of each transaction.

29. The Proxy Statement fails to disclose the following concerning Allen & Company's "*Discounted Cash Flow Analyses*" for Metromile and Lemonade: (1) all line items underlying the

unlevered free cash flows; (2) the implied terminal values for Metromile; and (2) the individual inputs and assumptions underlying the (i) after-tax multiples and revenue multiples, and (ii) discount rates.

30. The valuation methods, underlying assumptions, and key inputs used by Allen & Company in rendering its purported fairness opinion must be fairly disclosed to Metromile shareholders. The description of Allen & Company's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Metromile shareholders are unable to fully understand Allen & Company's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

31. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

32. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

33. The Proxy Statement provides that the Company entered into a non-disclosure agreement with Party B but fails to disclose its relevant terms, including whether such agreement contained a standstill provision with a "don't ask, don't waive" (DADW) provision (including the time of its enforcement) that would preclude Party B from making a superior offer for the Company and/or its business(es).

34. Without this information, Metromile shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because

a reasonable Metromile shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

35. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

38. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

39. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

40. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

41. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

45. In particular, each of the Individual Defendants had direct and supervisory

involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

  B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

  E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 10, 2022        Respectfully submitted,

                **HALPER SADEH LLP**

                /s/ Zachary Halper
                Zachary Halper, Esq.
                186 Darwin Lane
                North Brunswick, NJ 08902
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600
                Email: zhalper@halpersadeh.com

                Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
                667 Madison Avenue, 5th Floor
                New York, NY 10065
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600

                *Counsel for Plaintiff*